**In re BROWN.**

No. 4558.

District Court, D. New Hampshire.

Nov. 16, 1940.

620 

Samuel A. Margolis, of Manchester, N. H., for creditors.

Winslow H. Osborne, of Concord, N. H., for bankrupt.

MORRIS, District Judge.

This matter comes to the Court on a certificate for review from an order of the Referee in Bankruptcy, granting an unqualified discharge to the bankrupt from his provable debts. From this order two objecting creditors Daniel I. Rotman and George H. Whitney, have filed objections.

██ The salient facts reported by the Referee are that Francis Irving Brown, the bankrupt, filed a petition in this court on March 8, 1939, with an affidavit of poverty. On the same day he was adjudged a bankrupt and the petition referred to the Referee in Bankruptcy. Provable debts of the objecting creditors were listed in the bankrupt's schedules. The Referee made the usual request to the bankrupt for indemnity for expenses, which was not furnished, and on June 14, 1939, the Referee recommended that the proceedings be dismissed, under the rule, and it was ordered that the proceedings be dismissed for want of prosecution. No notices to creditors were ever sent out, nor were any proofs of claim filed.

The present case was filed March 2, 1940. Brown was again adjudicated a bankrupt and the petition referred in the usual course. A small amount of property was scheduled and a trustee was appointed. June 4, 1940, was fixed as the date on or before which objections to the discharge were to be filed and notices were sent to all creditors.

Claims of the objecting creditors were again scheduled and duly proved and they seasonably filed objections to the bankrupt's discharge. A hearing on said objections was held September 26, 1940, at which time it was ordered that a discharge be granted. Within ten days therefrom the objecting creditors severally filed petitions for a review.

The petitions for review came on for hearing before this court October 31, 1940, and were argued by counsel for the petitioning creditors and the bankrupt. Both sides submitted briefs. The only question is whether or not the claims listed in the former proceedings are dischargeable in this proceeding. The Referee took the position that the doctrine of res adjudicata should not be applied in a case where no proceedings were taken to which both the bankrupt and creditors were parties; that the first proceedings never reached a stage where the creditors had actually appeared and no decision had been made which was mutually binding upon them.

Following the rule in the case of In re Perry, D.C., 50 F.2d 464, the bankrupt was granted an unconditional discharge.

My first impressions were that the Referee's ruling was correct, but after a careful study of numerous cases, particularly the case of Pollet v. Cosel, 1 Cir., 179 F. 488, 489, 30 L.R.A.,N.S., 1164, I am convinced that the case relied on by the Referee is contrary to the weight of authority. In the Pollet case the bankrupt failed to prosecute his application for discharge.

The Court refused to grant in the second bankruptcy proceedings a discharge as to debts provable under the first proceeding but did grant a qualified discharge from intervening debts. Judge Putnam in his opinion says: "The questions we have here, in one form or another, have been before Circuit Courts of Appeals in other circuits three times: First, in Re Fiegenbaum, in the Circuit Court of Appeals for the Second Circuit, decided on February 25, 1903, 121 F. 69, 57 C.C.A. 409; second, in Kuntz v. Young, in the Circuit Court of Appeals for the Eighth Circuit, decided on July 28, 1904, 131 F. 719, 65 C.C.A. 477; and, third, again in the Circuit Court of Appeals for the Second Circuit, in Re Kuffler, 151 F. 12, 80 C.C.A. 509, decided January 7, 1907. In the first case a discharge had been refused. In the second and third cases the petition for a discharge had been dismissed for want of prosecution, the same as here. And yet the same result was reached practically in each case, all in support of the judgment of the District Court now appealed from."

Other cases examined sustaining the same principle are: In re Early, D.C., 34 F.Supp. 774; In re Loughran, 3 Cir., 218 F. 619; In re Cooper et al., D.C., 236 F. 298; In re Spangler, D.C., 256 F. 62; In re Mayer, D.C., 4 F.Supp. 203; In re Kough, D.C., 25 F.Supp. 656; In re Schwartz, D.C., 16 F.Supp. 993; Hill v. Railroad Industrial Finance Company, 10 Cir., 92 F.2d 973; In re Vardell, 28 A.B. R.,N.S., 697.

In the last mentioned case the facts are in all respects the same as those in the instant case. The bankrupt in 1933 filed a voluntary petition in bankruptcy and failed to pay the costs as was ordered by the court or to secure the same and the proceeding was dismissed. Later, in 1934 or 1935, the bankrupt filed a second petition in which certain claims scheduled in the first petition were rescheduled in the second. It was held that by reason of his failure to prosecute the first petition claims scheduled therein were res adjudicata under the second petition.

District Judge Gore in his opinion says:

"The bankrupt stood by and failed to prosecute his case, was cited to appear in court, paid no attention to same, and permitted his case to be dismissed for the nonpayment of costs. This is against the policy, equity and spirit of the bankruptcy law. "Bankruptcy is a special dispensation and gives freedom from debts when properly applied for and pursued under the proper rules and law, and when one comes into court asking this favor he should obey all rules, orders, and where one stands by and fails to pay costs, after being cited, as was done in this cause and allows his cause to be dismissed, he is bound by same and the rule of res adjudicata as to the former case applies and may be invoked by any creditor scheduled under the former petition when same is rescheduled under a later petition.

"If this rule were not adopted and enforced, bankrupts would abuse this court and allow their petitions to lapse for non-payment of costs and refile same, and make this court a perpetual paymaster, which is in conflict with all good conscience, equity and the bankruptcy law."

· The only possible distinction between the Pollet case, supra, decided in this Circuit, and the case at bar, is that in the · Pollet case the creditors' claims were filed and allowed in the first bankruptcy proceeding while in the instant case the objecting creditors' claims were scheduled by the bankrupt but the proceedings were dismissed before they had an opportunity to prove their claims. This was not due to any fault of the creditors but to the neglect of the bankrupt to prosecute his action. The distinction, therefore, does not, to my mind, take the instant case out of the class of cases holding that the first proceedings is res adjudicata as to the claims of the objecting creditors.

▇▇ I do not overlook the · fact that prior to the passage of the Chandler Act effective September 22, 1938, a bankrupt desiring to obtain a discharge had to file a separate petition therefor within one year from the date of the petition which time might be extended for cause shown in the discretion of the court six months beyond the twelve months period. Since under the amended act application for a discharge is included in the adjudication, dismissal of the proceeding necessarily includes a denial of the application for discharge. Section 14 of the Bankruptcy Act, 11 U.S.C.A. § 32.

▇▇ Upon the filing of a petition in bankruptcy every creditor having a provable claim whose debt is listed becomes a party to the proceeding and if the bankrupt obtains a discharge the debt is discharged even though it has not been proved.

622

There is force in the argument that if a bankrupt files a petition and is adjudicated, permits it to continue on the docket and through neglect, or for any reason, allows his petition to be dismissed and thereafter is permitted to file a subsequent petition listing the same creditors, he may thus hold his creditors off from the collection of their debts for an indefinite period. In the instant case the effect of the first proceeding was to hold off the bankrupt's creditors from March 8, 1939, to June 14, 1939. Much may happen in three months time.

The case of Bluthenthal v. Jones, 208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390, is authority for the principle that creditors must be alert and not stand by in a second bankruptcy proceeding and allow their claims scheduled in a prior proceeding to be discharged.

In the instant case the two objecting creditors are properly resisting the discharge of their debt and the Referee's ruling granting an unqualified discharge is reversed and the cause remanded to the Referee in Bankruptcy to modify his ruling in accordance with this opinion.