**In re SCHINDLER.**

No. 46937.

District Court, E. D. New York.

June 20, 1947.

Newman & Bisco, of New York City (Henry Landau, of New York City, of counsel), for petitioner for motion.

Herman G. Robbins, of Brooklyn, N. Y., for bankrupt, opposed.

KENNEDY, District Judge.

This is a proceeding in bankruptcy, and the question for decision is whether an

unqualified order of discharge can stand. Although only that single question is really here for decision, the order complained of is attacked by two methods: (1) by a direct proceeding in this Court, in which the moving creditor prays for an order modifying the discharge order, so as to exclude from its operation the debts proved in a prior bankrupt proceeding, or, in the alternative, remanding the discharge order to the referee for correction, and (2) by the same creditor's petition to review an order of the referee denying the same relief.

On October 22, 1930, the bankrupt filed his petition in the Southern District of New York. In his schedules he listed a judgment in favor of Conlew, Inc. On February 26, 1932, the estate in the Southern District of New York was closed, the bankrupt not having filed any application for discharge, and more than 16 months having elapsed after the filing of the petition.

On November 27, 1946, the bankrupt filed a voluntary petition in this Court. He listed the Conlew judgment, and also other claims proved in the Southern District proceeding. A first meeting of creditors was held on December 18, 1946, when it was directed that objections to discharge be filed on January 23, 1947. No objections having been filed, the referee, on January 24, 1947, signed the unqualified order of discharge which is the subject of the present controversy.

On January 31, 1947, the creditor here involved, claiming to be an assignee of the Conlew judgment, moved before the referee for an order amending the unqualified order of discharge, limiting its operation to new debts (i. e., debts not proved in the Southern District proceeding). This motion, returnable February 5, 1947, was heard on February 11, 1947, and was denied by the referee by order dated April 3, 1947. The creditor now, as observed above, makes a direct application in this Court to amend the unqualified order of discharge, and also files its petition to review the order of April 3, 1947, by which the referee denied it the same relief as it seeks here under its direct application.

In a considered opinion the referee has held that the unqualified order of discharge should stand as it is, because before it was made nobody specifically raised the objection that the prior proceeding in the Southern District acted as a bar to unqualified discharge. This objection, says the referee, is in the nature of a plea of res judicata, and is waived unless specifically interposed in the discharge proceedings. As for the creditor's later application to amend the discharge order, the referee holds that the creditor was asking (Federal Rules of Civil Procedure, rule 60(b), 28 U.S.C.A. following section 723c) to be relieved against excusable neglect, that the creditor's neglect to file a specific objection was not excused, and that this made out a plain case of laches on the part of the creditor, barring the relief which it sought.[1]

But still I do not see how the unqualified order of discharge can stand. At the outset it should be made clear that there is simply no analogy between the case at bar, and cases arising under either Section 14 of the Act of July 1, 1898, as amended, 11 U.S.C.A. § 32, or Section 15 of the same statute, 11 U.S.C.A. § 33. Nobody claims that this bankrupt has been guilty of any fraud. Indeed, his schedules filed in the proceeding in this court disclose fully and frankly that some of the debts listed were also the subject of the prior

---

[1] This finding by the referee is based upon the fact that prior to January 24, 1947, the date of the discharge order, there was a conversation between the referee's clerk and the creditor's attorney, in the course of which the latter, who had inquired whether the discharge order would be qualified, was told to put what objection he had into a formal sworn statement, and to file it by the dead line date, January 23, 1947. The moving petitioning creditor here does not deny that this incident took place, and, in fact, admits that failure to file the objection was an oversight on its part. I could not, and do not, disturb the findings of the referee (a) that the creditor was warned to file a specific objection, and (b) that it offered no real excuse for failing to file one in time.

proceeding in the Southern District. Nor does the proceeding at bar involve a situation where a prior discharge has been granted. The question here is (1) whether denial of discharge in a prior proceeding will bar discharge of the same debts thereafter only when some creditor insists upon it, or (2) whether, on the other hand, the prior denial should be given such broad effect that the action or nonaction of any creditor is of little importance, if any.

Even before the decision in Freshman v. Atkins, 1925, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193, the position taken in this circuit was that denial of discharge bars any discharge of the same debts in a second proceeding in much the same way as the doctrine of res judicata forbids relitigation of the same issues between the same parties. In re Fiegenbaum, 2 Cir., 1903, 121 F. 69. As Judge Swan says, tracing the history of the doctrine (In re Schwartz, 2 Cir., 1937, 89 F.2d 172), the reasons supporting these decisions have not always been the same. The Supreme Court, approving this doctrine in Freshman v. Atkins, supra, 269 U.S. 121, 124, 46 S.Ct. 41, 70 L.Ed. 193, and quoting from In re Fiegenbaum, supra, 2 Cir., 121 F. 69, 70, says: "Not only should the court of bankruptcy protect the creditors from an attempt to retry an issue already tried and determined between the same parties, but the court, for its own protection, should arrest, in limine, so flagrant an attempt to circumvent its decrees." So strict has been the application of the rule that the Circuit Court of Appeals for the Second Circuit has held that, under the former bankruptcy statute, mere failure by the bankrupt to apply operates as a denial of discharge barring a second application (Chopnick v. Tokatyan, 2 Cir., 1942, 128 F.2d 521), and that even a petition for arrangement, filed in a bankruptcy proceeding, should be dismissed when it appears that discharge has formerly been denied the bankrupt, I. & I. Holding Corporation v. Greenberg, 2 Cir., 1945, 151 F.2d 570.

So far as I am aware, no court has said that there is such a close analogy between a prior denial of discharge, on the one hand, and prior judgment, on the other,

that in both cases the "defense" is waived unless pleaded. It has been thought that such a rule of procedure obtains when the bankrupt has previously secured a discharge In re Weinstock, D.C.E.D.N.Y., 73 F.Supp. 734. This, however, is because objection to discharge, based upon this ground, is statutory, 11 U.S.C.A. § 32, sub. b. And that statute, hinting at procedural matters, speaks of "proofs and pleas", making discharge mandatory "unless" (11 U.S.C.A. § 32, sub. c,) the bankrupt has committed one of the excepted acts.

Withholding of discharge because of denial of discharge in a prior proceeding rests on no narrow basis nor even on any statutory basis, at least directly. True enough, as Judge Patterson points out (In re Zeiler, D.C.S.D.N.Y. 1937, 18 F. Supp. 539, 540), some courts have said that the basis of the rule as res judicata. But Judge Patterson also points out that other courts have assigned another basis for the rule, namely, that to grant discharge on a second application would be to evade the then existing requirement put upon the bankrupt to apply for his discharge within the statutory period. 11 U.S.C.A. § 32, sub. a, as it stood prior to the 1938 amendment. Judge Swan, writing in the same year as Judge Patterson (1937), thinks this the most convincing reason in support of the rule. In re Schwartz, supra, 2 Cir., 89 F.2d 172, 174.

In Freshman v. Atkins, supra, it is said that to ignore the first proceeding and to make a second application is (269 U.S. 121, 124, 46 S.Ct. 41, 42, 70 L.Ed. 193): "an imposition upon and an abuse of the process of the court, if not a clear effort to circumvent the statute by enlarging the statutory limitation of time within which an application for a discharge must be made".

The question at bar is not affected by changes in the statute which now make the filing of a petition in bankruptcy itself an application for discharge. 11 U.S.C.A. § 32, sub. a, as amended June 22, 1938. It has been specifically pointed out (Colwell v. Epstein, 1 Cir., 1944, 142 F.2d 138, 139, 156 A.L.R. 836) that removal of the

time limitation upon applications for discharge does not weaken the res judicata basis for the rule concerning the effect of prior discharge, nor overrule the prior judge-made law on the subject.

And even though there is some analogy between the effect of prior denial of discharge and the effect of a prior judgment, it seems to me completely erroneous to reason, as the referee does, that both rules have all of the same incidents, including the res judicata rule that the defense is waived unless pleaded. Freshman v. Atkins, supra, certainly indicates that prior denial of discharge is more than a "defense". The opinion in that case, as I have said, speaks of the second application for discharge as an imposition upon and an abuse of the process of the court, and says that, even where there is no clear objection by an interested party, the court may refuse discharge ex mero motu. I cannot, therefore, believe this doctrine rests solely upon the narrow basis that the statute, when the Freshman opinion was written, put a time limitation upon applications for discharge. Nor can there ever be a complete analogy even between the doctrine of res judicata, on the one hand, and the effect of prior denial of discharge in bankruptcy on the other. For example, the doctrine of res judicata comes into play only when the parties in interest in the second proceeding are the same as, or privies with, those involved in the first proceeding. The suitor's personality counts, and he controls the litigation. But administration of a bankrupt's estate is in many respects utterly unlike the prosecution of lawsuits between individuals. It is clearly the court's duty to protect all creditors, whether they want protection or not. Unless I misread the Freshman opinion, the court must act of its own motion, when its records disclose that the bankrupt is making a second application for the same relief (discharge) which has once been withheld. The wishes of the individual creditors don't count.

If I am right in this, the "laches" of any particular creditor, or group of creditors in the situation at bar, simply does not matter. Nor is it important whether, ultimately, the prior denial of discharge is called to the attention of the referee by a "party in interest" (it is here contended that there is no showing when or how the Conlew judgment was assigned to the moving creditor). The records before the referee disclose that discharge had been previously denied for some of the scheduled debts. Therefore, he knew judicially that the bankrupt was simply not entitled to an unqualified discharge. Nothing in the shape of unreasonable delay by any creditor could be of the slightest detriment to the bankrupt, a necessary element of laches. And the situation would not have been changed in the slightest degree even if nobody specifically called the referee's attention to the matter. He was called upon to act ex mero motu.

I believe that the bankrupt is entitled only to a qualified order of discharge, eliminating from its operation those debts proved in the proceeding in the Southern District of New York. Therefore, upon the petition to review, the order of April 3, 1947, should be reversed, and the motion to amend the order of January 24, 1947, granted. This probably makes moot the companion direct application by the moving creditor in the alternative to vacate the order of January 24, 1947, or to remand it for correction. This second application is, therefore, dismissed, but without prejudice to renewal, in the event that I have committed any procedural error.

Should there be a review of the order to be entered on this decision, I suggest that both applications, in abbreviated form, be included in the appeal record so that the Circuit Court of Appeals may make a final disposition of the matter, unhampered to the greatest extent possible by procedural complications.

Submit order on notice.