## Louisville & Nashville Railroad Co. v. Perry Ice & Bottling Company et al.

(Decided November 16, 1928.)

### Appeal from Perry Circuit Court.

1. Carriers.—Where railroad collected from consignee of intrastate freight shipments amount less than required by its published tariffs, it could not recover deficiency from subsequent purchaser of consignee's business, in absence of pleading that sale of business was in effect merely a merger of consignee with purchasing company so as to make purchaser a mere continuation of consignee, or that purchaser assumed to pay consignee's debts.

2. Carriers.—That purchaser owed consignee, from whom carrier failed to collect published freight charges, $5,000 on the purchase price of business consignee sold purchaser, did not authorize carrier's recovery against purchaser, where it had not attached or otherwise sought to subject that fund.

3. Evidence.—To establish railroad's intrastate freight tariffs, it is better practice to introduce in evidence certified copies of tariffs filed with Railroad Commission rather than to depend on oral testimony from tariffs on file with railroad.

4. Trial.—In absence of objection, railroad's tariffs on intrastate freight shipments could properly be proved by oral testimony of railroad's rate clerk from tariffs in his possession, which were on file with the railroad commission.

5. Carriers.—That railroad failed to post copies of intrastate freight tariffs at local station to which intrastate shipments were consigned, as required by law, held immaterial on question of its right to recover from consignee, who acted on faith of freight charges paid by it in subsequently selling goods, deficiency between amount erroneously collected from consignee and amount prescribed by tariffs.

6. Carriers.—That consignee of intrastate freight shipments had paid freight charges demanded by carrier at time of delivery, and had sold goods thereafter on strength of freight rate so paid; held

not to estop railroad from recovering deficiency between freight so collected and published tariffs.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, C. S. LANDRUM and JESSE MORGAN for appellant.

WOOTTON, SMITH & WOOTON and J. W. CRAFT for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing in part and affirming in part.

The appellant, Louisville & Nashville Railroad Company, was unsuccessful as plaintiff in the trial court, and has filed in this court a copy of the record and made a motion that it be granted an appeal. On and between the dates of May 23, 1921, and June 29, 1921, there was shipped over the lines of the Louisville & Nashville Railroad Company from Winchester, Ky., to the Perry Ice & Bottling Company at Hazard, Ky., six carloads of ice, which were duly delivered to the latter, and on which it paid the freight charges, then demanded by the railroad company.

On November 8, 1923, the Perry Ice & Bottling Company sold all of its holdings and property to the Hazard Ice & Storage Company. On June 10, 1924, the railroad company sued both of these ice companies, setting up the above facts and alleging that the freight charged and collected on these shipments was $471.21 less than should have been charged and collected thereon according to the published tariffs. The Perry Ice & Bottling Company answered on September 12, 1924, traversed the petition in the first paragraph, and in its second paragraph pleaded that it had fully paid all the freight on these shipments that the defendant had demanded of it at the time of delivery, had sold the ice to the consuming public thereafter upon the strength of this freight rate, that by not demanding at the time the full rate the plaintiff had allowed the defendant to sell and dispose of this ice for less than it would have done had it known the truth, and for these reasons the Perry Ice & Bottling Company insisted that the Louisville & Nashville Railroad Company was estopped to now ask and demand of it the payment of a different and higher rate from that it demanded when the shipment was delivered.

The Hazard Ice & Storage Company in its answer first traversed the petition. Second, it pleaded that it purchased the entire property and holdings of the Perry Ice & Bottling Company, and, before paying it therefor,

demanded of and received from it a written, verified statement of what it represented to be a list of all the creditors of the Perry Ice & Bottling Company, together with their addresses, and the amount of indebtedness due and owing and to become due to each of such creditors; and that such statement did not contain the name of the Louisville & Nashville Railroad Company as one of the creditors of the Perry Ice & Bottling Company. Further it pleaded that this suit was not filed within four months after the consummation of the sale mentioned, and it pleaded as a complete bar to the action of the railroad company the provisions of Kentucky Statutes, section 2651a et seq. The third paragraph it made a cross-action against the Perry Ice & Bottling Company.

The demurrers filed by the railroad company to these answers were overruled with exceptions. Thereupon it replied, putting in issue the affirmative matter in these answers, and alleging that the Perry Ice & Bottling Company knew of its claim for this undercharge, long before this sale, and that at the time the process was served upon the Hazard Ice & Storage Company the latter then owed the Perry Ice & Bottling Company $5,-000 upon the purchase price of this plant. The affirmative matter in this reply was by agreement controverted of record. A jury was impaneled, and at the conclusion of the evidence offered by the railroad company to establish the facts pleaded by it, and which did establish them, the court directed the jury to return a verdict for the defendants, which was done. The railroad company now claims that the court erred in giving such instructions.

We shall dispose of the claim against the Hazard Ice & Storage Company first. The railroad company had not pleaded that the sale by the Perry Ice & Bottling Company of its holdings to the Hazard Ice & Storage Company was in effect merely a merger of the Perry Ice & Bottling Company into the Hazard Ice & Storage Company, so as to make the Hazard Company a mere continuation of the Perry Ice & Bottling Company, and hence responsible for its debts, nor had it pleaded that the Hazard Ice & Storage Company had assumed or undertaken to pay the debts of the Perry Ice & Bottling Company, hence it has no pleading here to serve as a basis for the introduction of the evidence to show that the Hazard Ice & Storage Company was at all responsible for this freight. The Hazard Company had not yet come into

existence at the time that this indebtedness was incurred, and unless there was something to show that it in some way assumed, undertook, or obligated itself to pay this freight, then there is no cause of action stated against the Hazard Company. It is not necessary for us to decide whether or not section 2651a et seq. applies because, if it does not apply, there is no cause of action stated against the Hazard Company, and if it does apply then the plea of limitations interposed by the Hazard Company is good, because this suit was not instituted within four months after the consummation of the sale, hence the judgment dismissing the petition as against the Hazard Company is affirmed. The mere fact that the Hazard Company owed the Perry Company $5,000 does not give the railroad company any right to recover a judgment against the Hazard Company, as it had not attached, or in any other way sought to subject, that fund.

Coming now to the claim of the railroad company against the Perry Ice & Bottling Company, we find that the proof clearly establishes that there is a balance due the railroad company from the Perry Ice & Bottling Company of $471.21. It is the contention of the Perry Ice & Bottling Company that the Louisville & Nashville Railroad Company failed to prove its claim: First, by failing to prove that this rate was 32 cents instead of 17½ cents, the rate charged, and, second, that it failed to prove that the tariffs upon which it was relying had been filed with the Railroad Commission. To establish these things the railroad company introduced its rate clerk, Tuttle, and while he was on the stand, asked him if he had copies of the tariffs governing these shipments with him. He said he had, and then he was asked from those tariffs to state what the rate was upon these shipments, and he did so. He was then asked if these tariffs were on file with the Kentucky Railroad Commission, and he said they were. It would have been the better practice to have had certified copies of the tariffs that were on file with the Railroad Commission and to have filed those certified copies in evidence, but no objection was offered to the manner adopted of proving these rates, and in the absence of objection, it is permissible to prove them in this way. This shipment was wholly intrastate. It did not affect other states. The Interstate Commerce Commission had no jurisdiction over these rates, therefore it was not necessary that it be shown that the tariffs fixing

these rates had been filed with the Interstate Commerce Commission.

There is some dispute about whether or not this tariff was then posted at Hazard, but it makes no difference whether it was or not, because it was held by the United States Supreme Court in the case of I. C. R. Co. v. Henderson Elevator Co., 226 U. S. 441, 33 S. Ct. 176, 57 L. Ed. 290, which reversed the judgment of this court reported in 138 Ky. 220, 127 S. W. 779, that the erroneous quotation by a railroad agent of a rate, whereby he quoted the rate too low, gave the shipper who sustained an injury by reason of the quotation of the rate, and acted on the faith of it, no cause of action against the carrier, and that this was true although the tariff quoting the correct rate was not posted or on file in the carrier's local station. To the same effect is K. C. S. R. Co. v. C. H. Albers Com. Co., 223 U. S. 593, 32, S. Ct. 316, 56 L. Ed. 556, and in our domestic case of L. & N. R. Co. v. Allen, 152 Ky. 145, 153 S. W. 198, we said:

> "The fact, if such it was, that the company failed in this case to post copies of the tariff as the law required, affords appellee no relief."

This brings us to the estoppel pleaded by the Perry Company, and upon that question the case of L. & N. R. Co. v. Allen, supra, is fatal to the contention of the Perry Company. See, also, the case of C. & O. R. Co. v. Maysville Brick Co., 132 Ky. 643, 116 S. W. 1183.

It follows, therefore, that the motion for an appeal as to the Perry Company must be and it is now sustained, the appeal is granted, and the judgment is reversed and remanded for further proceedings in conformity with this opinion; and as to the Hazard Ice & Storage Company, the appeal is denied, and the judgment affirmed.

The whole court sitting.